**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**HDI GLOBAL SPECIALTY SE**
HDI-Platz 1
30659 Hannover
Germany

                    **Plaintiff,**

**v.**

**STANTON VIEW DEVELOPMENTS,**
**LLC**
SERVE: LPRA Inc.
4725 Wisconsin Avenue, NW, Suite 250
Washington DC, 20016

**RIVER EAST AT ANACOSTIA, LLC**
SERVE: Tamara Lee
1054 31st Street, NW, Suite 290
Washington, DC 20007

**JERRY VINES**
5211 Princestons Delight
Bowie, Maryland 20720

**DONTE LEE**
14401 Turner Wootton Parkway
Upper Marlboro, Maryland 20774

**ANDREW BATTLE**
11800 Liliam Lane
Glenn Dale, Maryland 20769

**CAPITOL DEVELOPMENT DESIGN,**
**INC.**
SERVE: James Watkins
1002 Shepherd Street, NE
Washington, DC 20017

**Case No.**

1

**MADDOX ENGINEERING, INC.**
SERVE: LSBA, Inc.
c/o Miles & Stockbridge, P.C.
100 Light Street
Baltimore, Maryland 21202

**M&F CONCRETE, INC.**
SERVE: Marcos Silva
12082 Serenity Place
Nokesville, Virginia 20181

**SKARDA AND ASSOCIATES, INC.**
SERVE: Registered Agent Solutions, Inc.
1100 H Street, NW, Ste. 840
Washington, DC 20005

**SGA COMPANIES INC.**
SERVE: SGA Companies Inc.
7508 Wisconsin Avenue, 4th Fl.
Bethesda, Maryland 20814
-and-
SERVE: Frederick Taylor
1433 Otis Street, NE
Washington, DC 20017

**MANNA, INC.**
SERVE: Joshua Galvez
6856 Eastern Avenue, NW, Ste. 100
Washington, DC 20012
        -and-
SERVE: John Swarr
6106 40th Avenue
Hyattsville, MD 20782

**DISTRICT OF COLUMBIA**
SERVE: Muriel Bowser
c/o Ms. Julia Wiley
Office of General Counsel
1800 Martin Luther King Jr. Avenue, SE
Washington, DC 20020
        -and-
Muriel Bowser
Office of the Attorney General
400 6th Street, NW
Washington, DC 20001
        -and-

2

Muriel Bowser
ATTN: Service of Process on the District
John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004

**RIVER EAST AT GRANDVIEW
CONDOMINIUM UNIT OWNER'S
ASSOCIATION, INC.**
SERVE: District Registered Agent Services,
Inc.
1025 Connecticut Avenue, NW, Ste. 615
Washington, DC 20036

**LADONNA MAY**
1262 Talbert Street SE, Unit 5A
Washington DC 20020

**ADE ADENARIWO**
1262 Talbert Street SE, Unit 9A
Washington DC 20020

**BRITNEY BENNETT**
1262 Talbert Street SE, Unit 5B
Washington DC 20020

**THERESA BROOKS**
1262 Talbert Street SE, Unit 20A
Washington DC 20020

**DAVINA CALLAHAN**
1262 Talbert Street SE, Unit 14A
Washington DC 20020

**DENINE EDMONDS**
1262 Talbert Street SE, Unit 10B
Washington DC 20020

**CIERA JOHNSON**
1262 Talbert Street SE, Unit 7B
Washington DC 20020

**ROBIN MCKINNEY**
1262 Talbert Street SE, Unit 15A
Washington DC 20020

3

**YVONNE LAWSON**
1262 Talbert Street SE, Unit 17B
Washington DC 20020

**JEANITA BROWN**
1262 Talbert Street SE, Unit 14B
Washington DC 20020

**ANTOINETTA KELLEY**
1262 Talbert Street SE, Unit 16B
Washington DC 20020

**TERRI WRIGHT**
1262 Talbert Street SE, Unit 22A
Washington DC 20020

**TRACIE CHEEK**
1262 Talbert Street SE, Unit 13A
Washington DC 20020

**CHANEL TOMS**
1262 Talbert Street SE, Unit 20B
Washington DC 20020

**BRIANNA WALTON**
1262 Talbert Street SE, Unit 18A
Washington DC 20020

**NOKIA HILL**
1262 Talbert Street SE, Unit 18B
Washington DC 20020

**RAYONA JEFFRIES**
1262 Talbert Street SE, Unit 11A
Washington DC 20020

**JAZTINA SOMERVILLE**
1262 Talbert Street SE, Unit 6B
Washington DC 20020

**JESSICA FRANKLIN**
1262 Talbert Street SE, Unit 23A
Washington DC 20020

295239456v.1

**JERUSALEM BELAI**
1262 Talbert Street SE, Unit 8A
Washington DC 20020

**REGINA HAIRE**
1262 Talbert Street SE, Unit 23B
Washington DC 20020

**KOQWINDA CHAMBERS**
1262 Talbert Street SE, Unit 22B
Washington DC 20020

                    **Defendants.**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HDI Global Specialty SE ("HGS"), formerly known as International Insurance Company of Hanover SE, by and through its undersigned counsel files this Complaint and alleges as follows:

## PARTIES

1.      Plaintiff HGS is a *societas europaea* organized under the laws of the European Union with its registered office in Hannover, Germany. *See, e.g., SNC-Lavalin Constructors, Inc. v. Tokio Marine Kiln Ins. Ltd.,* 2021 U.S. Dist. LEXIS 115530 * 25-28 (D.C. Md. Jun. 21, 2021) (holding that for purposes of establishing diversity a s*ocietas europaea* is analogous to a domestic U.S. corporation and is a citizen of the European Union and the location of its registered office for purposes of establishing diversity.)

2.      Defendant Stanton View Developments, LLC ("Stanton"), is a limited liability company organized under the laws of the District of Columbia with its principal office in the District of Columbia. Upon information and belief, there are no members of Stanton who are citizens of the European Union or Germany.

5

3.     Defendant River East at Anacostia, LLC ("River East"), is a limited liability company organized under the laws of the District of Columbia with its principal office in the District of Columbia. Upon information and belief, there are no members of River East who are citizens of the European Union or Germany.

4.     Defendant Jerry Vines, a natural person, is a citizen of Maryland and resident of Bowie, Maryland.

5.     Defendant Donte Lee, a natural person, is a citizen of Maryland and resident of Upper Marlboro, Maryland.

6.     Defendant Andrew Battle, a natural person, is a citizen of Maryland and resident of Glenn Dale, Maryland.

7.     Defendant Capital Development Design, Inc. ("CDDI") is a Maryland corporation with its principal place of business in Beltsville, Maryland.

8.     Defendant Maddox Engineering, Inc. ("Maddox") is a Maryland corporation with its principal place of business in Rockville, Maryland.

9.     Defendant M&F Concrete, Inc. ("M&F") is a Virginia corporation with its principal place of business in Manassas, Virginia.

10.     Defendant Skarda and Associates, Inc. ("Skarda") is a Maryland corporation with its principal place of business in Baltimore, Maryland.

11.     Defendant SGA Companies, Inc. ("SGA") is a Maryland corporation with its principal place of business in Bethesda, Maryland.

12.     Defendant MANNA, Inc. ("Manna") is a District of Columbia non-profit corporation with its principal place of business in the District of Columbia.

295239456v.1

13.     Defendant District of Columbia, acting though its Department of Housing and Community Development, Housing Regulation Administration, and Rental Conversion and Sales Division, is a municipality and federal district of the United States.

14.     Defendant River East at Grandview Condominium Unit Owner's Association, Inc (the "Grandview UOA") is a District of Columbia non-profit corporation with its principal place of business in the District of Columbia.

15.     Defendant LaDonna May, a natural person, is a citizen and resident of the District of Columbia.

16.     Defendant Ade Adenariwo, a natural person, is a citizen and resident of the District of Columbia.

17.     Defendant Britney Bennett, a natural person, is a citizen and resident of the District of Columbia.

18.     Defendant Theresa Brooks, a natural person, is a citizen and resident of the District of Columbia.

19.     Defendant Davina Callahan, a natural person, is a citizen and resident of the District of Columbia.

20.     Defendant Denide Edmonds, a natural person, is a citizen and resident of the District of Columbia.

21.     Defendant Ciera Johnson, a natural person, is a citizen and resident of the District of Columbia.

22.     Defendant Robin McKinney, a natural person, is a citizen and resident of the District of Columbia.

23.     Defendant Terri Wright, a natural person, is a citizen and resident of the District of Columbia.

24.     Defendant Yvonne Lawson, a natural person, is a citizen and resident of the District of Columbia.

25.     Defendant Jeanita Brown, a natural person, is a citizen and resident of the District of Columbia.

26.     Defendant Antoinette Kelley, a natural person, is a citizen and resident of the District of Columbia.

27.     Tracie Cheek, a natural person, is a citizen and resident of the District of Columbia.

28.     Chanel Toms, a natural person, is a citizen and resident of the District of Columbia.

29.     Brianna Walton, a natural person, is a citizen and resident of the District of Columbia.

30.     Norika Hill, a natural person, is a citizen and resident of the District of Columbia.

31.     Rayona Jeffries, a natural person, is a citizen and resident of the District of Columbia.

32.     Jaztina Somerville, a natural person, is a citizen and resident of the District of Columbia.

33.     Jessica Franklin, a natural person, is a citizen and resident of the District of Columbia.

34.     Jerusalem Belai, a natural person, is a citizen and resident of the District of Columbia.

35.     Regina Haire, a natural person, is a citizen and resident of the District of Columbia.

36.     Koqwinda Chambers, a natural person, is a citizen and resident of the District of Columbia.

## JURISDICTION AND VENUE

37.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of determining an issue of actual, substantive, and justifiable controversy between the parties concerning their respective rights, duties and obligations with a certain excess business auto policy.

38.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the parties have diverse citizenship and the amount in controversy exceeds $75,000, as such, this Court has original jurisdiction.

## STATEMENT OF THE CASE

39.     Plaintiff issued a series of commercial general liability policies to named insured Stanton View Development LLC:

  a.  Policy no. IG06C001952-00, with policy period October 28, 2013 to October 28, 2014. A copy of Policy no. IG06C001952-00 is attached as Exhibit 1.

  b.  Policy no. IG06C001952-01, with policy period October 28, 2014 to October 28, 2015. A copy of Policy no. IG06C001952-01 is attached as Exhibit 2.

  c.  Policy no. IG06C001952-02, with policy period October 28, 2015 to October 28, 2016. A copy of Policy no. IG06C001952-02 is attached as Exhibit 3.

  d.  Policy no. IG06C001952-03, with policy period October 28, 2016 to October 28, 2017. A copy of Policy no. IG06C001952-03 is attached as Exhibit 4.

  e.  Policy no. IG06C001952-04, with policy period October 28, 2017 to October 28, 2018. A copy of Policy no. IG06C001952-04 is attached as Exhibit 5.

f.   Policy no. IG06C001952-05, with policy period October 28, 2018 to October 28, 2019. A copy of Policy no. IG06C001952-05 is attached as <u>Exhibit 6</u>.

40.   River East at Anacostia, LLC is also a named insured, but only on policy nos. IG06C001952-01, IG06C001952-02, and IG06C001952-03.

41.   The policies are substantively identical, save for policy no. IG06C001952-05 which is a slightly different coverage form with a few relevant changes to the endorsements. For purposes of this complaint, all six policies will be referred to collectively as "the Policy." In the event a distinction needs noting between one policy and another, the policies will be identified by specific policy number.

42.   The Policy was delivered to the Named Insured(s) in the District of Columbia.

43.   Defendants Stanton, River East, Vines, Lee, and Battle seek insurance coverage under the Policy for defense and indemnification in four lawsuits currently pending in the Superior Court for the District of Columbia (collectively the "Lawsuits"): *La Donna May, et al., v. Stanton View Developments, LLC, et al.,* Case No. 2021 CA 000266 B, In the Superior Court for the District of Columbia (the "May Action"); *LaDonna May, et al., v. Jerry Vines, et al.,* Case No. 2021 CA 002268 B, In the Superior Court for the District of Columbia (the "Second May Action"); *Brittney Bennet, et al. v. MANNA, Inc., et al.,* Case No. 2021 CA 003895 B, In the Superior Court for the District of Columbia (the "Bennett Action"); and *Yvonne Lawson, et al. v. Stanton View Dev., LLC, et al.,* Case No. 2023 CA 002254 B, In the Superior Court for the District of Columbia (the "Lawson Action.")

44.   Defendants May, Adenariwo, Bennett, Brooks, Callahan, Edmonds, Johnson, McKinney, Wright, Lawson, Brown, Kelley, Cheek, Toms, Walton, Hill, Jeffries, Somerville, Franklin, Belai, Haire, and Chambers (collectively the "Underlying Plaintiffs") are plaintiffs in the

295239456v.1

underlying Lawsuits and are individual unit owners at the "River East at Grandview" condominium (the "Condominium') located at 1262 Talbert Street SE, Washington, DC 20020. The Underlying Plaintiffs are joined in this declaratory judgment action solely as to be bound by any declarations from this Court. HGS asserts no affirmative claims against Underlying Plaintiffs and will dismiss them from the action if they stipulate to be bound by the declarations of this Court.

45.    Defendants Stanton and River East are the developers/builders of the Condominium, and River East was the Declarant of the Condominium.

46.    Defendants Vines, Lee, and Battle are the member/managers of Stanton and River East.

47.    Defendants CDDI, Maddox, M&F, Skarda and SGA (collectively the "Subcontractors") are subcontractors who participated in the building of the Condominium pursuant to various contracts with Defendants Stanton and River East. The Subcontractors are defendants in the Lawsuits and have filed various counterclaims and crossclaims among against Stanton, River East, Vines, Lee, and/or Battle in the Lawsuits and are joined in this declaratory judgment action solely as to be bound by any declarations from this Court. HGS asserts no affirmative claims against the Subcontractors and will dismiss them from the action if they stipulate to be bound by the declarations of this Court.

48.    Defendant Manna is a non-profit housing service provider who allegedly marketed units in the Condominium to some of the Underlying Plaintiffs. Manna is named as a defendant in the Bennett Action and is joined in this declaratory judgment action solely as to be bound by any declarations from this Court. HGS asserts no affirmative claims against Manna and will dismiss it from the action if it stipulates to be bound by the declarations of this Court.

11

49.     Defendant District of Columbia, acting though its Department of Housing and Community Development, Housing Regulation Administration, and Rental Conversion and Sales Division, provided funding to Stanton and River East to build the Condominium and purportedly provided funds to some or all of the Underlying Plaintiffs to purchase units at the Condominium. The District of Columbia is named as a defendant in the May and Lawson Actions and is joined in this declaratory judgment action solely as to be bound by any declarations from this Court. HGS asserts no affirmative claims against the District of Columbia and will dismiss it from the action if it stipulates to be bound by the declarations of this Court.

50.     Defendant Grandview UOA is the unit owner's association for the Condominium which allegedly failed to identify defects in the structure of the Condominium prior to taking over management of the Condominium from Stanton and River East. Grandview UOA is named as a defendant in the May and Lawson Actions and is joined in this declaratory judgment action solely as to be bound by any declarations from this Court. HGS asserts no affirmative claims against Grandview UOA and will dismiss it from the action if it stipulates to be bound by the declarations of this Court.

51.     The Lawsuits allege various claims for damages against Defendants Stanton, River East, Vines, Lee, and Battle arising out of structural and foundational defects at the Condominium due to deficiencies in the design, development, construction, and maintenance of the Condominium.

52.     The May Action and Second May Action are substantively identical in their allegations; however, the May Action names the Defendant entities, Stanton and River East, and the Second May Action names the individual Defendants Vines, Lee, and Battle. A copy of the

May Action complaint is attached as <u>Exhibit 7</u>. A copy of the Second May Action complaint is attached as <u>Exhibit 8</u>.

53.     The Bennett Action sets forth similar allegations regarding structural and foundational defects at the Condominium against Stanton and Vines. A copy of the Bennett Action complaint is attached as <u>Exhibit 9</u>.

54.     The Lawson Action sets forth similar allegations regarding structural and foundational defects at the Condominium against Stanton and River East. A copy of the Lawson Action complaint is attached as <u>Exhibit 10.</u>

55.     Stanton initially applied for a building permit on December 27, 2013, for: "Addition to a single-family house, and conversion into a 46-unit apartment building with 48 parking spaces including 10 compact spaces." The building permit was issued on December 10, 2014. A copy of the December 10, 2014, building permit is attached as <u>Exhibit 11</u>.

56.     Stanton filed an application for the certificate of occupancy on the project on February 8, 2017. The final certificate of occupancy for "Apartment Building – 46 Units with 40 Parking Spaces" was issued on February 9, 2017. A copy of the February 9, 2017, certificate of occupancy is attached as <u>Exhibit 12</u>.

57.     Accordingly, all substantive work at the condominium was presumptively completed no later than February 8, 2017.

58.     Prior to the initiation of the above lawsuits, in or around August 2016, a dispute arose between Stanton and its subcontractors CDDI, and FES Group, LLC ("FES") related to the failure of a modular retaining wall during construction of the Condominium.

59.     On September 21, 2016, Stanton, CDDI and FES agreed to submit the dispute to binding arbitration and executed an arbitration agreement (the "Arbitration Agreement"). The

Arbitration Agreement dictated that neutral GeoDesign & Engineering, Inc. ("GeoDesign") would inspect the retaining wall and issue a decision assigning responsibility for the failure of the retaining wall among the parties. A copy of the Arbitration Agreement is attached as Exhibit 13.

60.     Pursuant to the Arbitration Agreement, to the extent CDDI or FES bore responsibility for the failure of the retaining wall, any damage assessed would be deducted from outstanding amounts owed by Stanton to CDDI and FES on their respective contracts related to the building of the Condominium.

61.     The final report from GeoDesign dated May 1, 2017, found Stanton 20% at fault for its role as the earthwork contractor (not for its work as developer on the project), FES 10% at fault, and CDDI 60% at fault (the "Arbitration Award"). The remaining 10% fault was attributed to the structural engineer Skarda, who was not a party to the Arbitration Agreement. A copy of the final Arbitration Award is attached as Exhibit 14.

62.     Plaintiffs in the May and Second May Actions allege that they are first time home buyers in Washington, DC, who purchased units at the Condominium between July 2017 and January 2019 directly from Stanton and River East. Plaintiffs in the May and Second May Actions make various allegations of uneven floors, cracks and gaps in drywall and flooring, broken plumbing, uneven windows and doors, gaps around windows and doors, and mold from water intrusion due to cracked foundations, walls and pipes. All of these issues purportedly arise out of foundational and structural defects from Stanton's failure to properly set the foundation, shifting of earth under the Condominium, and due to settling of the foundation or portions of the foundation.

63.     Plaintiffs in the May Action seeks to recover against Stanton and River East for alleged violations of the DC Consumer Protection Procedures Act (Count I), DC Human Rights

Act (Count II), DC Condominium Act (Counts III & IV), as well as on theories of Negligent Construction (Count V), Breach of Contract (Count VI), Breach of Implied Warranties (Count VII), Negligent Misrepresentation (Count VIII), Negligence (Count X), Fraud (Count XI), Strict Liability (Count XII), and Intentional Infliction of Emotional Distress (Count XIII). The Complaint asks for compensatory damages as well as treble and punitive damages, and injunctive relief ordering Stanton and River East to repair all alleged structural defects at the Condominium.

64.    Plaintiffs in the Second May Action seek to pierce the corporate veil and recover against Vines, Lee, and Battle based on the allegation that they are Stanton and co-mingled personal funds with those of Stanton.

65.    The specific allegations of wrongdoing and theories of recovery in the Second May Action are identical to those in May Action, with the addition of a count for Unjust Enrichment (Count XIV in the Second May Action).

66.    Plaintiffs in the Bennett Action allege that they are first time home buyers in Washington, DC, who purchased units at the Condominium between July 2017 and January 2019. Plaintiffs in the Bennett Action make various allegations of uneven floors, cracks and gaps in drywall and flooring, broken plumbing, uneven windows and doors, gaps around windows and doors, and mold from water intrusion due to cracked foundations, walls and pipes. Plaintiffs in the Bennett Action allege they discovered these defects at various times between December 2017 and December 2019. All of these issues purportedly arise out of foundation defects at the Condominium. Specifically, Plaintiffs in the Bennett Lawsuit allege that a hydrostatic pressure condition exists at the Condominium, that the foundation was never inspected by the DC Department of Consumer and Regulatory Affairs, that backfill soil was used to bring the site to

295239456v.1

grade but the backfill material was never properly evaluated, and that, as a result of the foundation problems, the Condominium is uninhabitable and Plaintiffs were required to leave their homes.

67.     Plaintiffs in the Bennett Action recover seek to recover against Stanton and Vines for alleged negligence in the building and development of the Condominium; specifically, they allege that the foundation and fill used to bring the site to grade violated DC building codes (Count 1), and that a proper vapor barrier as not installed (Count 2). It also seeks to recover against Stanton and Vines for breach of contract (Count 9), and for fraudulent misrepresentation as to the condition of the property (Count 11). Plaintiffs in the Bennett Action ask for compensatory damages and punitive damages, plus costs and attorneys' fees.

68.     Plaintiffs in the Lawson Action allege that they are first time home buyers in Washington, DC, who purchased units at the Condominium. Plaintiffs in the Lawson Action allege that on or about August 3, 2021, they became aware of issues with the construction and habitability of their units. The state that they received a report from an engineering company which indicated instability in the soil on which the units are constructed, and that this instability put their homes at risk of structural damage, including water infiltration and risk of collapse. Plaintiffs allege that in September 2021, the units were rendered uninhabitable, and the District of Columbia relocated Plaintiffs to temporary housing, where Plaintiffs continue to reside.

69.     Plaintiffs in the Lawson Action seek to recover against Stanton and River East for alleged violations of the DC Consumer Protection Procedures Act (Count I), DC Human Rights Act (Count II), Breach of Implied Warranties (Count III), as well as on theories of Misleading Statements in a Public Offering Statement (Count IV), Negligent Construction (Count V), Breach of Contract (Count VI), Negligent Misrepresentation (Count VII), Negligence (Count VIII), Fraud (Count IX), and Strict Liability (Count X). Plaintiffs in the Lawson Action seek damages for

16

emotional distress, compensatory damages, as well as treble and punitive damages. Plaintiffs in the Lawson Action also ask that they be released from their purchase obligations and given a full refund, including for any costs associated with relocation and temporary housing.

70.     HGS is currently defending Stanton and River East in the May Action pursuant to a reservation of rights issued for the May Action and a supplemental reservation of rights issued for the May, Second May, and Bennett Actions. A copy of the May Action reservation of rights is attached as Exhibit 15.

71.     HGS is currently defending Vines, Lee, and Battle in the Second May Action pursuant to a reservation of rights issued for the Second May Action and the supplemental reservation of rights. A copy of the Second May Action reservation of rights is attached as Exhibit 16.

72.     HGS is currently defending Stanton and Vines in the Bennett Action pursuant to a reservation of rights issued for the Bennett Action and the supplemental reservation of rights. A copy of the Bennett Action reservation of rights is attached as Exhibit 17.

73.     A copy of the supplemental reservation of rights issued for the May, Second May, and Bennett Actions is attached as Exhibit 18.

74.     HGS is currently defending Stanton and River East in the Lawson Action pursuant to a reservation of rights issued for the Lawson Action. A copy of the Lawson Action reservation of rights is attached as Exhibit 19.

## THE INSURANCE POLICY

75.     The Policy provides the following relevant coverage grant:

*1. Insuring Agreement*

> *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this*

17

*insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

***

*b. This insurance applies to "bodily injury" and "property damage" only if:*

> *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
>
> *(2) The "bodily injury" or "property damage" occurs during the policy period;*
>
> *(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

*c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.*

*d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

> *(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*
> *(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*
> *(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

*e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".*

18

(Policy, Section I, pgs. 1, 2.)

76.     The Named Insured on the Policy is Stanton View Development LLC on policy nos. IG06C001952-00, IG06C001952-04, IG06C001952-05, and Stanton View Development LLC and River East at Anacostia LLC on policy nos. IG06C001952-01, IG06C001952-02, IG06C001952-03, (Policy, Declarations.)

77.     The Condominium was removed from the schedule of insured locations by Endorsement effective June 23, 2017. (Policy No. IG06C001952-03, Policy Change No.2 endorsement.)

78.     The Policy defines who is "insured" under the Policy as follows:

     a.  *Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*

       *The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.*

(Policy, Preamble, pg. 1.)

     b.  *If you are designated in the Declarations as:*

                ***

      *c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.*

(Policy, Section II, pgs. 9.)

79.     Policy Nos. IG06C001952-00, 01, 02, 03, 04, contain the following important limitations:

      *SECTION III – LIMITS OF INSURANCE, Paragraph 5, is amended to add the following: However, if an "occurrence" causes "bodily injury" and/or "property damage" for which coverage is provided for an insured or insureds under this policy and for one or more of the same insureds under one or more other policies issued by us or an affiliated company, the total payable under all policies for the sum of damages under Coverage A*

*and medical expenses under Coverage C is limited to the highest Each Occurrence Limit on any of the policies that provide coverage for one or more of the same insureds.*

(Policy Nos. IG06C001952-00, 01, 02, 03, 04, Non-Stacking of Limits endorsement.)

80.    Policy No. IG06C001952-05 contains a similar endorsement:

*In the event this policy and any other insurance policy issued to you by us . . . apply to the same incident, act, offense, claim, suit, or occurrence, or series of related incidents, acts, offenses, claims, suits, or occurrences, whichever is applicable, the following conditions apply:*

*1. No more than one policy shall apply and there shall be a duty to defend and duty to indemnify for no more than one policy. Further, the policy that shall have a duty to defend and/or indemnify, if there is any, shall be solely the earliest of such insurance policies;*

*2. The most we will pay for "bodily injury", "property damage", "personal and advertising injury", or "medical payments", is the applicable remaining limits of insurance available under the one policy that has the duty to defend;*

(Policy Nos. IG06C001952-05, Anti-Stacking Endorsement.)

81.    The Policy also contains the following relevant exclusions:

*2. Exclusions*

*This insurance does not apply to:*

*a. Expected Or Intended Injury*

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .*

\*\*\*

*j. Damage To Property*

*"Property damage" to:*

*(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

*(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*

\*\*\*

*(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

*(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

\*\*\*

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."*

\*\*\*

*k. Damage To Your Product*

*"Property damage" to "your product" arising out of it or any part of it.*

*l. Damage To Your Work*

*"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

(Policy, Section I., pgs. 2, 4-5; Exclusion-Intentional Injury endorsement.)

82.     Policy Nos. IG06C001952-00, 01, 02, 03, 04 contain the following additional exclusion by endorsement:

*This insurance does not apply to*

*Subsidence*

*"bodily injury", "property damage" or "personal and advertising injury" arising out of "subsidence" of land and arising out of or attributable to any ongoing operation of the insured or performed on the insured's behalf or the "products/completed operations hazard."*

*This exclusion applies whether such "bodily injury", "property damage" or "personal and advertising injury" arises solely from subsidence" or from "subsidence" in combination with other causes whether natural or man made.*

21

*"Subsidence" means earth movement including but not limited to: 1) Landslide; 2) Mudflow; 3) Earth sinking; 4) Earth rising; 5) Collapse or movement of fill; 6) Improper compaction; 7) Earth settling, slipping, falling away, caving it, eroding or tilting; 8) Earthquake; or 9) Any other movement of land or earth.*

(Policy Nos. IG06C001952-00, 01, 02, 03, 04, Exclusion-Subsidence endorsement.)

83.     Policy No. IG06C001952-05 contains a similar additional endorsement:

*This insurance does not apply to, and we have no duty to defend or indemnify, any claim, act, offence, occurrence or "suit" that in whole or in part is caused or is alleged to have been caused, directly or indirectly, based on, attributable to, arising out of, results from, is aggravated by, is a consequence of, or is in any manner related to the "movement of land, earth, or soil." This exclusion applies regardless of any other actual or claimed cause or event contributing concurrently or in any sequence or manner to the loss or claimed injury or damages, including but not limited to, the following causes:*

\*\*\*

*6. Faulty, inadequate or defective:*

*a. Planning, zoning development, surveying, siting; or*

*b. Designs, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, drainage; or*

*c. Materials used in repair, construction, renovation or remodeling;*

*d. Maintenance;*

*of part or all of any property wherever located.*

*7. Any other event, conduct or misconduct which may have or is claimed to have precipitated, caused or acted jointly, concurrently, or in any sequence with "movement of land, earth, or soil" in causing the injury or damage.*

*As used herein "movement of land, earth or soil" shall include, but is not limited to, earthquake, landslide, subsidence, mudflow, sinkhole, erosion, upheaval, slippage, sliding, sinking, rising, shifting, tilting, settling, falling away, moving expanding or contracting of earth or soil.*

(Policy No. IG06C001952-05, Absolute Movement of Land, Earth, or Soil Exclusion endorsement.)

84.     The Policy contains the following additional exclusions by endorsement:

c.     *Punitive or Exemplary Damage*

22

*Any sums that the insured becomes legally obligated to pay for punitive, exemplary or multiple damages.*

(Policy, Exclusion-Punitive or Exemplary Damage endorsement.)

    d. *Fungi Or Bacteria*

*a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether the any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.*

*b. Any loss, cost or expenses arising out of the abating, testing for, monitoring cleaning up removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effect of "fungi" or bacteria, by any insured or by any other person or entity.*

    \*\*\*

*"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.*

(Policy, Fungi or Bacteria Exclusion endorsement.)

    e. *Condominium and Townhouse*

*"Bodily injury", "property damage" or "personal and advertising injury" however caused, arising, directly or indirectly, out of, or related to an insured's subcontractor's operations, "your work", or "your product", that are incorporated into a condominium or townhouse project. This exclusion applies only to projects that exceed 25 units. This exclusion does not apply if "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy."*

(Policy, Condominium, Townhouse or Tract Housing Coverage Limitation Endorsement.)

    85.    The Policy defines certain relevant terms as follows:

*5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".*

    \*\*\*

*13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

    \*\*\*

23

16. *"Products-completed operations hazard"*

　　*a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

　　　　*(1) Products that are still in your physical possession; or*

　　　　*(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:*

　　　　*(a) When all of the work called for in your contract has been completed.*

　　　　*(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*

　　　　*(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

　　　　*Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

17. *"Property damage" means:*

　　*a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

　　*b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

21. *"Your product":*

　　*a. Means:*

　　　　*(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

　　　　　　*(a) You;*

　　　　　　*(b) Others trading under your name; or*

*(c) A person or organization whose business or assets you have acquired; and*

*(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

*b. Includes*

*(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*

*(2) The providing of or failure to provide warnings or instructions.*

*c. Does not include vending machines or other property rented to or located for the use of others but not sold.*

22. *"Your work":*

*a. Means:*

*(1) Work or operations performed by you or on your behalf; and*

*(2) Materials, parts or equipment furnished in connection with such work or operations.*

*b. Includes*

*(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*

*(2) The providing of or failure to provide warnings or instructions.*

(Policy, Section V., pgs. 12-15.)

86.     The Policy also contains the following relevant conditions:

*2. Duties In The Event Of Occurrence, Offense, Claim Or Suit*

*a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:*

*(1) How, when and where the "occurrence" or offense took place;*

25

*(2) The names and addresses of any injured persons and witnesses; and*

*(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.*

*b. If a claim is made or "suit" is brought against any insured, you must:*

*(1) Immediately record the specifics of the claim or "suit" and the date received; and*

*(2) Notify us as soon as practicable.*

*You must see to it that we receive written notice of the claim or "suit" as soon as practicable.*

*c. You and any other involved insured must:*

*(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";*

*(2) Authorize us to obtain records and other information;*

*(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and*

*(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

*d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*

(Policy, Section IV, pg. 12.)

87.     The Policy also contains the following relevant condition by endorsement:

*As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"*

26

*1) received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor;*

*2) obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits of $1,000,000 per occurrence;*

*3) obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and*

*4) obtained proof that all licenses as required by local and/or state statute regulation or ordinance are up to date.*

*The insured must maintain the records evidencing compliance with paragraphs (1) through (4) for a minimum of five years from the expiration date of this policy. If these records are not maintained we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf.*

*The insurance provided by this policy shall be excess over and above any other valid and collectible insurance available to the insured under paragraph (2).*

(Policy, Contractors Special Conditions endorsement.)

## FIRST CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT

88.     HGS restates and re-alleges the allegations set forth in paragraphs 1-70 as though fully set forth herein.

89.     An actual controversy exists between Plaintiff HGS and Defendants Stanton, River East, Vines, Lee, and Battle concerning whether, and to what extent, HGS has any obligation to defend and/or indemnify these Defendants in connection with the Lawsuits.

90.     HGS has no obligation to defend and/or indemnify Defendants in connection with the Lawsuits because coverage for the Lawsuits is barred, in whole or in part, by the Policy's Condominium, Townhouse or Tract Housing Coverage Limitation Endorsement as the Condominium is comprised of more than 25 units.

27

91.     HGS has no obligation to defend and/or indemnify Defendants in connection with the Lawsuits because coverage for the Lawsuits is barred, in whole or in part, by the Policy's Damage To Property exclusion, as Defendants owned and/or sold the premises at issue to Underlying Plaintiffs.

92.     HGS' coverage under the Policy is excess to any coverage afforded to Defendants as additional insureds on policies held by their contractors/subcontractors pursuant to the Contractors Special Conditions endorsement.

93.     HGS has no obligation to defend and/or indemnify Defendants in connection with the Lawsuits to the extent that Defendants did not comply with the conditions set forth in the Policy's Contractors Special Conditions endorsement.

94.     HGS has no obligation to indemnify Defendants in connection with any award for punitive or treble damages in the Lawsuits because coverage for such damages is barred by the Policy's Exclusion-Punitive or Exemplary Damage endorsement. (Policy, Exclusion-Punitive or Exemplary Damage endorsement.)

95.     To the extent HGS does owe a duty to indemnify Stanton, River East, Vines, Lee, and/or Battle, HGS has no obligation to defend and/or indemnify Defendants for any occurrence or property damage taking place prior to October 28, 2014, as the Condominium was not added as an insured location on the Policy until that date. (Policy No. IG06C001952-00, Policy No. IG06C001952-01.)

96.     To the extent HGS does owe a duty to indemnify Stanton, River East, Vines, Lee, and/or Battle, HGS has no obligation to defend and/or indemnify Defendants for any occurrence or property damage taking place after June 23, 2017, as the Condominium was no longer an insured

location on the Policy as of that date. (Policy No. IG06C001952-03, Policy Change No.2 endorsement.)

97.     HGS has no obligation to defend and/or indemnify Defendants in connection with the Lawsuits under the coverage potentially afforded by Policy No. IG06C001952-03 or any subsequent policy year, as prior to the policy period, Defendants received notice of an "occurrence" and/or claim resulting in "property damage," as demonstrated by the Arbitration Agreement.

98.     To the extent HGS does owe a duty to indemnify Stanton, River East, Vines, Lee, and/or Battle, coverage under all policies, for all claims by Underlying Plaintiffs, for all Defendants, is limited to the single Each Occurrence Limit on any one Policy by virtue of the Non-Stacking of Limits endorsement (Policy Nos. IG06C001952-00, 01, 02, 03, 04) and/or Anti-Stacking Endorsement (Policy Nos. IG06C001952-05).

99.     Upon information and believe, Defendants disputes HGS's contention and contends that the Policy provides coverage for the Lawsuits.

100.     HGS is entitled to a declaration of its rights and obligations, if any, to Defendants in connection with the Lawsuits.

101.     There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

102.     Accordingly, HGS requests a declaration that it has no obligation to indemnify Defendants from the Lawsuits or any additional lawsuits arising out of or in connection with the Lawsuits or the incident described therein, based on the terms, conditions, and exclusions of the Policy.

103.    HGS also requests a declaration that it has no obligation to defend Defendants in the Lawsuits or any additional lawsuits arising out of or in connection with the Lawsuits or incident described therein, based on the terms, conditions, and exclusions of the Policy.

104.    HGS also requests a declaration that HGS' coverage under the Policy is excess to any coverage afforded to Defendants as additional insureds on policies held by their contractors/subcontractors pursuant to the Contractors Special Conditions endorsement.

105.    HGS also requests a declaration that to the extent HGS does owe a duty to indemnify Stanton, River East, Vines, Lee, and/or Battle, coverage under all policies, for all claims by Underlying Plaintiffs, for all Defendants, is limited to the single Each Occurrence Limit on any one Policy by virtue of the Non-Stacking of Limits endorsement (Policy Nos. IG06C001952-00, 01, 02, 03, 04) and/or Anti-Stacking Endorsement (Policy Nos. IG06C001952-05).

WHEREFORE, Plaintiff, HDI Global Specialty SE, hereby respectfully requests for judgement as follows:

A.  A declaration that Plaintiff has no obligation under the Policy to indemnify Defendants from the Lawsuits or any additional lawsuits arising out of or in connection with the Lawsuits or the incident described therein, based on the terms, conditions, and exclusions of the Policy.

B.  A declaration that Plaintiff has no obligation under the Policy to defend Defendants in the Lawsuits or any additional lawsuits arising out of or in connection with the Lawsuits or the incident described therein, based on the terms, conditions, and exclusions of the Policy.

C.  A declaration that HGS' coverage under the Policy is excess to any coverage afforded to Defendants as additional insureds on policies held by their contractors/subcontractors pursuant to the Contractors Special Conditions endorsement.

D.  A declaration that to the extent HGS does owe a duty to indemnify Stanton, River East, Vines, Lee, and/or Battle, coverage under all policies, for all claims by Underlying Plaintiffs, for all Defendants, is limited to the single Each Occurrence Limit on any one Policy by virtue of the Non-Stacking of Limits endorsement (Policy Nos. IG06C001952-00, 01, 02, 03, 04) and/or Anti-Stacking Endorsement (Policy Nos. IG06C001952-05).

E.  All such further relief that this Honorable Court deems proper and just.


Dated: April 4, 2024                    Respectfully submitted,

                                        **HDI GLOBAL SPECIALTY SE**

                                        By Counsel:

                                        WILSON, ELSER, MOSKOWITZ
                                        EDELMAN & DICKER LLP

                                        */s/ Peter M. Moore*
                                        Peter M. Moore, Esq. (DC Bar No.: 985713)
                                        8444 Westpark Drive, Suite 510
                                        McLean, VA 22102-5102
                                        Tel.: 703-245-9300
                                        Fax: 703-245-9301
                                        peter.moore@wilsonelser.com
                                        *HDI Global Specialty SE*